## 112 WEST 59TH STREET CORPORATION v. HELVERING, Commissioner of Internal Revenue.

### No. 5825.

Court of Appeals of the District of Columbia.
Argued Oct. 12, 1933.
Decided Nov. 27, 1933.

James Craig Peacock, of Washington, D. C., and Claude E. Koss of New York City, for petitioner.

G. A. Youngquist, Sewall Key, F. Edward Mitchell, C. M. Charest, E. Barrett Prettyman, and Dean P. Kimball, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Petitioner was incorporated under the New York laws in December, 1919. Its charter authorized it to buy, sell, and generally deal in real estate. In the month and year of its incorporation it acquired title to the real estate located at 112 West 59th Street, and in 1921 this real estate was sold at a profit of $51,547.88. The Commissioner and the Board decided that the profit was income to petitioner.

Two questions were argued: First, whether the amount of the profit mentioned, viz., $51,547.88, was in fact and in law income of petitioner or income of the Beaumont Investment Trust (which claimed it and had paid the tax on it). Second, whether, even if it was income of petitioner, the Commissioner is not now bound by an agreement made with the trust pursuant to section 1106 (b) of Revenue Act of 1926 (44 Stat. 113, tit. 26 US CA § 1249 note), by which he treated it as the income of the trust.

An abridged statement of the facts is as follows: Beaumont Investment Trust was an unincorporated Massachusetts trust, created in 1918, of which Louis D. Beaumont was the principal trustee. Beaumont spent most of his time abroad, but he negotiated on behalf of the trust a number of transactions in this country through agents. During his absence in 1919 he purchased for the trust the property in question, and sold the same for the trust in 1921 at the profit hereinbefore mentioned, and this the trust reported and paid income tax on for that year. Because of Beaumont's absences from the country, his attorneys, to facilitate a contemplated immediate resale of the property, organized petitioner for the sole purpose of holding and conveying the record title. Petitioner never had any funds. The purchase money for the property was paid by the trust directly to the vendor, and on the resale in 1921 the proceeds were paid directly to the trust. The building was vacant between the time of purchase and resale, and all expenses and carrying charges were paid directly by the trust. All accounts with relation to the property were carried on the books of the trust. All of petitioner's officers and directors were employees in the law office in which the transaction was carried out. It kept no books of account and had no meetings of stockholders, and its minute book contained only the unsigned minutes of its organization meeting. Ten shares of stock of the par value of $100 each were apparently subscribed for, either in the name of Beaumont or of the trust, but whether ever issued or not does not appear. In May, 1928, the trust and the Commissioner entered into an agreement in pursuance of section 1106 (b) of the Revenue Act of 1926, supra, whereby they agreed that the determination and assessment made by the Commissioner for the years 1919 to 1925, inclusive, against the trust should be final and conclusive.

On these facts the Board held that petitioner, because it was a distinct entity, was taxable on the gain from the sale of the property, and sustained both the tax and a 25 per

398

cent. penalty imposed by the Commissioner for failure to file a return. Petitioner concedes that it is an organized corporation, but insists that its relation to the real estate and the profit ensuing from its sale was one of trust or agency and not of beneficial ownership. It says as a matter of fact and of law, the profit was the profit of the Beaumont Investment Trust and not its own.

As we have already seen, the uncontradicted evidence shows that the entire beneficial interest in the property was in the trust during all the times in question. Beaumont, in behalf of the trust, had taken a contract to buy the property. This contract apparently was taken over by the company in consideration of the issue to the trust, or to Beaumont, of the entire ten shares of capital stock issued or to be issued by petitioner, and all of this was solely to accomplish a legal holding and transfer of title to the property. All disbursements on this account made by the trust were recorded in its account books, and the $51,547.88 profit, as reported by the trust and taxed to it by the Commissioner in the final determination of its taxes, was taken without any change from the details in its original books of account.

█ In Central Life Society v. Commissioner, 51 F.(2d) 939, 941, the Court of Appeals in the Eighth Circuit, speaking through Judge Stone, said: "Tax laws are essentially practical in their purposes and application, and the federal income tax laws are no exception. While, for purposes of convenience and certainty in collection of such taxes, it is sometimes provided that those who collect income for others shall pay therefrom the taxes thereon, yet a cardinal purpose of the income tax laws is to tax the income to the person who has the right or beneficial interest therein, and not to throw the burden upon a mere collector or conduit through whom or which the income passes."

█ We think this a correct statement of the law. If, therefore, it appears, as we think it does appear, that petitioner was a mere "conduit," and that it never at any time had any legal right to retain the profits from the transaction in question and never at any time had possession of such profits, but that on the contrary the profits in right and in law were always the property of the trust, then it would seem to follow that the liability to pay the tax under the federal income tax laws was solely a liability of the trust and not a liability of petitioner. And this is particularly true when we consider that the former duly reported and paid the tax and no question of bad faith in the organization of petitioner or in its participation in the transaction is or can be attributed to it. The brief of the Commissioner frankly says "there is no fraud here."

That petitioner on the admitted facts is a mere trustee is beyond question. If the contest, instead of involving a tax, were a contest between petitioner and the trust, it would be unconscionable to argue that, because the property was taken in petitioner's name, it could claim a beneficial ownership therein. It may well be that at the time of the transaction there was no specific or formal agreement that petitioner should hold the property for the benefit of the trust, but the absence of such agreement or the lack of formality does not alter the obvious intent of the arrangement. No court would in the circumstances we have named permit it to retain the property or the profits in fraud of the real owner. Petitioner is a New York corporation, and the doctrine we have stated is that recognized and enforced by the courts of that state. See Foreman v. Foreman, 251 N. Y. 237, 167 N. E. 428; Bork v. Martin, 132 N. Y. 280, 30 N. E. 584, 28 Am. St. Rep. 570; Robbins v. Robbins, 89 N. Y. 251. It is quite true the New York cases to which we have referred each involved an element of bad faith on the part of the person in whose name title was taken, and the holding in them perhaps goes no further than a declaration that the courts will in such a case penetrate the veil to determine the truth of ownership, but they are authority, and rightly so, for the proposition that where, as a mere matter of convenience, property is taken in the name and with the consent of a person who contributes nothing to its acquisition, he will not be heard, in fraud of the rights of the true owner, to claim the proceeds of its sale because of his apparent ownership.

█ In the instant case, Beaumont, the trustee of the trust, was abroad at the time the property was acquired. He had contracted to buy the property for the trust and had placed the closing of the transaction in the hands of counsel, who perfectly understood that the purchaser was the trust, but, as it appears it was then contemplated that the property would almost immediately be resold, counsel, to provide a means of accomplishing this, advised Beaumont as follows: "In order to take title to the clubhouse on 59th Street formerly occupied by the Deutsche Verin, we deemed it wise in your absence to organize a

corporation known as 112 W. 59th St. Corporation." The corporation thus created furnished the structure for the taking and the holding of the legal title and the channel through which to pass it when the sale was made, but it furnished nothing more. It had no other function and performed none. It held the legal title, but it recognized at all times that the equitable title was in the trust. In such circumstances the Tax Board has many times held that no income accrues to the person in whose name the property is so held. Stewart Forshay, 20 B. T. A. 537; Greenleaf Textile Corp., 26 B. T. A. 737; Moro Realty Corp., 25 B. T. A. 1135. In the latter case, the Board's decision was affirmed without opinion by the Court of Appeals in the Second Circuit (65 F.(2d) 1013). But the Board has undertaken in the decision in this case to distinguish it from those just above mentioned. It says as to this case that there was no definite evidence as to how petitioner obtained title to this property, and that there was no evidence as to any agreement between petitioner and the trust as to a trust or agency, but we think these conclusions wholly unjustifiable from the evidence and the Board's own findings of fact. Instead of there being no evidence as to how petitioner obtained title to the property in question, there is explicit evidence that it obtained it without the payment of consideration and purely for the purpose of holding it for the convenience of the trust which owned it, and there is not a particle of evidence to the contrary. During the period between the purchase and the sale, the property was in the custody of the trust. The caretaker who looked after it was its servant, and the expenses, taxes, and other disbursements with relation to it were made directly by the trust. Except for its initial organization meeting, at which it took title, petitioner never undertook to do anything in connection with the property or with any other property. To all intents and purposes, it then ceased to function until by direction of the trust it conveyed title to the purchaser. It cannot be that the mere absence of an express agreement to hold the property as trustee can be said to be conclusive of the negative of that relationship. The question is rather one of fact, and, as we have seen, the facts proved and found by the Board irrefragably show the true nature of the transaction to have been a naked trusteeship.

In the view we have taken of the first question, the second need not be discussed.

Reversed.