*501 OPINION.
Disney:
The deficiencies in question are due, chiefly, to respondent’s disallowance for each year of claimed depreciation deductions, on the ground that petitioner did not own a hotel in respect of which the depreciation was claimed. The respondent denied petitioner the right to deduct from gross income for the year 1933 accrued real estate taxes, because its books were not kept, in the opinion of the respondent, on the accrual basis. For the year 1935 respondent denied petitioner the right to a deduction for interest accrued under a foreclosure decree, constituting a lien on hotel property, asserting that petitioner did not assume liability for the interest.
In each proceeding an amended petition was filed, wherein petitioner claimed that respondent erred in holding that it was taxable upon the moneys received or receivable by it in respect of rent for the hotel property, and, in the alternative, claims that, if so taxable, respondent erred in failing to allow it deductions for depreciation, for interest on the foreclosure decree constituting a lien against the property, for accrued taxes on the property, and for some operating expenses in amounts set forth in the respective petitions.
Obviously the first question for consideration is whether petitioner was taxable upon the moneys involved. They were received from the operation of a hotel. Petitioner contends that respondent’s view, when denying claim for depreciation, that it did not own the hotel, is a confession that the income from the hotel was not that of petitioner. We think such conclusion does not follow.. Petitioner obviously might have income from property not owned by it, such as under some sort of contractual arrangement. On the other hand, the respondent is, we think, likewise in error in his contention that because petitioner is admittedly a corporate entity it follows that it is taxable upon the moneys received. Corporate entity in fact, that is, incorporation in due form of law, has often appeared in cases where the entity was ignored for tax purposes, e. g., Southern Pacific Co. v. Lowe, 247 U. S. 330; Gulf Oil Corporation v. Lewellyn, 248 U. S. 71; and the very recent decision in Higgins v. Smith, 308 U. S. 473. We must therefore ascertain whether the situation here presented requires recognition, or disregard, of corporate entity. In general, corporate entity is and must be respected. “Only in cases where there are exceptional circumstances may the separate entity of the corporation be disregarded and the courts look through form to the *502 substance.” Consumers Construction Co. v. Commissioner, 94 Fed. (2d) 731, citing Burnet v. Commonwealth Improvement Co., 287 U. S. 415, and other cases. Is this such an exceptional case? In sum, we have here a default upon nearly $1,000,000 in bonds issued by a hotel company; the formation of a bondholders’ protective committee of three; inability of the committee to raise about $75,000 necessary for taxes, attorneys’ fees, trustee’s fees and other 'expenses before foreclosure could be completed and title obtained for the bondholders; demand by the committee upon the hotel company for either a receiver or title to the property hi order that the income could be utilized to cut down the money required and eventually permit foreclosure; acquiescence by the hotel company in a transfer of title provided an operating lease be given to a company formed by the hotel people; disinclination of the committee to having title in their individual names; the formation of petitioner with the three members of the committee as sole stockholders with no capital paid in; a small amount of stock issued in one certificate and deposited with the bank serving as bond depositary; the passage of title to petitioner and an operating lease to those interested in the hotel company; financial assistance rendered petitioner by the committee and use of the major part of all receipts of petitioner to the discharge of taxes and expenses of the committee in the foreclosure, such as attorneys’ and trustee’s fees; the default of the operating company after about one and one-half years; the completion of foreclosure purchase of the property with bonds by the committee through a member; assignment of bid to a corporation formed to take title and to issue its stock in exchange for bondholders’ rights; and the dissolution of petitioner.
In 112 West 59th Street Corporation v. Helvering, 68 Fed. (2d) 397, a corporation was duly organized with powers not dissimilar to those of petitioner, to hold title to real estate for an investment trust because of the absence from the country of the principal person concerned. As herein, the issuance of a small amount of stock was apparently perfunctory. Though there was no definite agreement that the corporation was agent or trustee for the real owner, the investment trust, the court held the corporation to be a mere conduit of profit made on' resale, and not taxable thereon. The court pointed out that if the contest had been between the corporation and the investment trust, instead of a tax question, no court would have permitted the corporation to retain from the investment trust the property or the profits.
So here we think it is wholly obvious that if the petitioner, with its three stockholder-directors the same as the three members of the bondholders’ protective committee, had by some good fortune, such as discovery of oil upon the hotel grounds, been able to sell the property for $2,000,000, for example, sufficient to discharge the bonds of about $1,000,000, the three committeemen, as the petitioner corporation, could *503 not have contended that the $1,000,000 surplus above debts belonged to petitioner and to them as its stockholders. The former hotel company-owner was held by the local court having jurisdiction to have no further interest, its contention that its deed was by way of further security being denied. Such a profit as above supposed would therefore belong either to the bondholders whose committee had formed petitioner, or to petitioner, with the members of such committee as its stockholders. To hold the latter would be a travesty upon the law of agency or trusteeship; yet the example serves to emphasize the fact that the committee, and the petitioner corporation set up by it, was the servant of the bondholders. The local court in Florida, though apparently the committee was not a formal party to the foreclosure litigation, held that petitioner was a “creature of the Bondholders Protective Committee and that said Bondholders Protective Committee is a party to this suit and subject to the jurisdiction of this court.” That the petitioner corporation was hardly more than a formality is indicated also by the fact that the three incorporators seem to disappear, receive no stock, and are immediately supplanted by the committee, the members of which receive stock certificate No. 1 and deposit it with the bond depositary. Though not holding that we are bound by the decision of the local court above mentioned, we think its pronouncement is enlightening in the situation. The petitioner corporation was in truth very plainly a mere creature of the bondholders’ protective committee. Had some stranger hotel company, perhaps already organized and operating elsewhere, taken a deed to the hotel property under agreement to apply rents upon taxes, etc., as did petitioner, the situation would patently have involved no status of agency or trust, and the stranger company would have been entitled to any profits made. But that reflection only serves to show a different situation, and a different result, here.
In North Jersey Title Insurance Co. v. Commissioner, 84 Fed. (2d) 898, a corporation was formed to hold title to property, because a title insurance company feared disastrous results of any publicity upon the fact that it had taken a great loss upon loans made upon the property through fraud of the mortgagors and others. The court called the corporation “a vehicle wherewith it [the executive committee, and officers of the insurance company mortgagee] should acquire and deal with the said properties for the insurance company”, pointed out that the 14 shares of stock in the corporation were all, except a qualifying share, held by stockholders of the insurance company, that the stock was deposited with the insurance company (much as was the small amount of stock in petitioner herein deposited with the bondholders’ depositary bank) and later transferred to the insurance company, that the insurance company provided money needed by the corporation (as was done by petitioner herein to the extent of *504 $12,500), that separate books were kept for the corporation, and that there was no thought in the minds of the stockholders of the corporation to profit by their holdings in the company. Herein, the petitioner’s three stockholder-committeemen deposited the single certificate of stock issued to all with the bond depositary, because they “felt that anything in the way of security, and so forth, should be held by the depositary for the Bondholders.” In the cited case the Board had recognized the corporate entity and its receipts as income to it. The court said that “It is difficult to reconcile this decision with the facts that gave rise to the birth of the Belhall Company [the corporation]” and pointed out that the insurance company-mortgagee, to prevent disaster, had incorporated the company “in which no third party had any stock or interest”; that substance and not form should govern; that no purpose of evading tax appeared; that the case presented the “peculiar circumstances” mentioned by Southern Pacific Co. v. Lowe, supra; and that, while in form there were two entities, in substance there was but one enterprise. The situation of the bondholders here is in no essential particular different from the mortgageholder insurance company in the North Jersey Title Insurance Co. case, supra. Other cases presenting strongly analogous situations which need not be analyzed are Commissioner v. Moro Realty Holding Corporation, 65 Fed. (2d) 1013, and Central Life Assurance Society Mutual v. Commissioner, 51 Fed. (2d) 939; also, Mark A. Mayer, 36 B. T. A. 117; Kaspare Cohn Co. Ltd., 35 B. T. A. 646, 669. Each case on the question rests peculiarly upon its own facts. We do not in this respect find helpful Consumers Construction Co. v. Commissioner, supra, where unusual circumstances justifying disregard of corporate entity were negatived rather than demonstrated; and in Erving V. Dwyer, 18 B. T. A. 349, the corporation, sought to be considered as the same entity as a partnership, had business and earnings in which the partnership in nowise participated. Other facts, not considered necessary of discussion, contribute to our conclusion that we have here a markedly peculiar situation requiring placing this proceeding in that category of decisions where corporate entity is subordinated to substance. We therefore conclude and hold that the sums received by petitioner and involved herein were received by it as a mere conduit or agent, and do not comprise income to petitioner.
In the light of this conclusion, it is unnecessary to pass upon the alternative questions presented. However, it is plain that the formation of petitioner and transfer of its stock to the committee did not effect a reorganization. The bondholders did not surrender anything to petitioner. On the contrary, they retained their bonds, purchased the property at the foreclosure sale with them, and apparently participated in a reorganization, since after the foreclosure sale it appears, though the evidence is incomplete, that a new *505 corporation, the North Florida Hotel Co., was formed on August 10, 1936, to take title to the property, and issued all its stock to the committee for the benefit of the depositing bondholders. It thus appears that there was no reorganization at any earlier date.
Reviewed by the Board.

Decisioni of no deficiency will be entered.