LYON INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 93858, 96546, 99832.   Promulgated October 29, 1940.

*G. A. Donohue, Esq., William H. West, Jr., Esq.,* and *Elden McFarland, Esq.,* for the petitioner.

*DeWitt M. Evans, Esq.,* for the respondent.

1096

OPINION.

LEECH: This case presents a deliberate attempt by G. Albert Lyon to dispose of his tire cover business and patent applications in such a way that not only would any tax upon him by reason of their disposition be postponed, but also the corporation to be formed to hold the patents would be entitled to use a stepped-up basis for depreciation. Although the law does not condemn this intent, *Gregory* v. *Helvering*, 293 U. S. 465, it requires that the transactions be closely scrutinized to discover whether they may be held to have consummated that intent. *Pacific Grape Products Co.*, 42 B. T. A. 914.

The initial transfer from Lyon to the Lyon Development Co. in exchange for all its stock was tax-free within section 112 (b) (5) of the Revenue Act of 1928 and the basis of the transferred assets then remained the same in the hands of that company. Sec. 113 (a) (6) of the same act. The transfer of the same assets from the Lyon Development Co. to petitioner was planned in such a way that petitioner would be entitled to use the basis of the cost of the patent applications to it, rather than their lower basis in the hands of the Lyon Development Co. Accordingly, Lyon gave his wife Lyon & Wilson, Inc., stock so that she might exchange it for 650 shares of petitioner's class A stock. Meanwhile the Lyon Development Co. exchanged the assets in its hands for 885 shares of petitioner's class A stock and 1,600 shares of petitioner's class B stock.

The exchanges between Elizabeth Aikens Lyon and petitioner, on the one hand, and the Lyon Development Co. and petitioner, on the other, were planned to have a double effect. The stock received by the Lyon Development Co. constituted only 79.27 percent of petitioner's capitalization. Thereby, so it was thought, the application of section 113 (a) (7) of the Revenue Act of 1928, requiring the transferee to use the transferor's basis if the property was acquired in connection with a reorganization and immediately thereafter an interest or control of the property of 80 per centum or more remained in the same persons, would be prevented. And, since the interests of Mrs. Lyon and Lyon Development Co. in the property

transferred, prior to the exchange, were not substantially proportionate to the amounts of stock of petitioner respectively received by them,[1] the application of sections 112 (b) (5) and 113 (a) (8) of the Revenue Act of 1928, requiring use of the transferor's basis if the transferee acquired the property in a section 112 (b) (5) transaction, would likewise be prevented. See *United Carbon Co.* v. *Commissioner*, 90 Fed. (2d) 43; *Hillyer, Edwards, Fuller, Inc.* v. *United States*, 52 Fed. (2d) 742. Thus, as the plan went, Lyon would pay no immediate tax, but petitioner would be able to use a stepped-up basis.

The same result was sought to be accomplished in *Royal Marcher*, 32 B. T. A. 76, but failed because in the transactions corresponding to the exchanges here between Elizabeth Aikens Lyon and petitioner and the Lyon Development Co. and petitioner, the stock received was substantially proportionate to the properties transferred and the whole arrangement fell within section 112 (b) (5).

Respondent does not now urge that the transactions come within section 112 (b) (5). His position is, however, that petitioner has reckoned without section 113 (a) (12) of the Revenue Act of 1934, which reads as follows:

> If the property was acquired, after February 28, 1913, in any taxable year beginning prior to January 1, 1934, and the basis thereof, for the purposes of the Revenue Act of 1932, was prescribed by section 113 (a) (6), (7), or (9) of such Act, then for the purposes of this Act the basis shall be the same as the basis therein prescribed in the Revenue Act of 1932.

An identical counterpart of the foregoing appears in the Revenue Act of 1936, with the same section number. Thus, says respondent, petitioner's basis for depreciation in the taxable years 1934 to 1937, inclusive, is governed by section 113 (a) (7) of the Revenue Act of 1932, which reads as follows, so far as here material:

> If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor * * *.

The next step of his argument is that petitioner acquired its property in connection with a reorganization, as that term is defined in section 112 (i) (1) (A) of the Revenue Act of 1932, namely "a merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation)."

---

[1] The property acquired by petitioner had a total value of $2,247,550.50. Mrs. Lyon received 20.73% of petitioner's stock, worth $445,187.22, but had contributed property (Lyon & Wilson stock) worth $662,351.19. Lyon Development Co. received 79.27% of petitioner's stock, worth $1,702,363.28, but had contributed property worth $1,485,199.31 (taking the patent applications to be worth $1,000,000 and the other assets to be worth $485,199.31, or what the purchaser was to pay for them under the agreement of May 3, 1930).

Petitioner acquired all of the property of the Lyon Development Co., and the latter received more than 50 percent of petitioner's stock. There is no doubt that the transaction falls literally within sections 112 (i) (1) (A) and 113 (a) (7), if a statutory reorganization may be properly held to have occurred. Hence, if such a holding is proper, petitioner will have to use the Lyon Development Co.'s basis, which in turn is the basis of the patents in the hands of G. Albert Lyon, by reason of the provisions of sections 113 (a) (8) and 112 (b) (5). This latter basis is $56,411.90, while the cost of the patents to petitioner is $1,146,201.21.[2]

Petitioner argues that the acquisition of all the property of the Lyon Development Co. by petitioner did not constitute a statutory reorganization, inasmuch as that company was a mere conduit for the transmission of assets of Lyon to petitioner, and stock in petitioner to Lyon. This transaction, it is said in effect, was "Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the [taxpayer]" (see *Gregory* v. *Helvering, supra*), and that no reorganization therefore occurred. Petitioner cites *Gregory* v. *Helvering* as supporting its position.

Respondent rests on an attempted distinction of the facts in that and the present case.

Thus, the record shows that while the Lyon Development Co. was formally organized, it performed only three corporate functions: It held the assets received from G. Albert Lyon on June 12, 1930, until June 14, 1930, at which time it retransferred them to petitioner; it held 885 shares of petitioner's class A stock and 1,600 shares of petitioner's class B stock from June 13, 1930, until November 1930, at which time it transferred petitioner's stock to G. Albert Lyon; and it filed income tax returns for 1930 and 1931. It also earned some royalties during the two days it held the Lyon patent applications and the license agreement, but there is no evidence that such royalties were actually paid to it. Any corporate meetings which were held were only in connection with the foregoing activities. Following its distribution of petitioner's stock to G. Albert Lyon,

---

[2] The actual value of the patents, as disclosed by uncontradicted expert testimony, and which is substantiated by the subsequent royalty history, was $1,000,000. The other assets were worth $485,199.31, the amount for which they were sold. The stock received from Mrs. Lyon was worth $662,351.19. The total value of the assets received by petitioner was $2,147,500.50, and its stock was worth that amount. *William Ziegler, Jr.*, 1 B. T. A. 186. Petitioner paid out 79,27% of its stock for the assets contributed by Lyon Development Co., which had a value of $1,702,363.28. But the patents constituted only 67.33% of the assets held by Lyon Development Co. ($1,000,000 out of $1,485,199.31), and therefore only 67.33% of the stock, or $1,146,201.21, was paid for the patents.

it performed no other corporate function until it was dissolved in 1937.

However, whether these facts afford any sound basis for distinguishing the situation here from that present in the *Gregory* case seems unimportant.

Respondent imposed a tax upon G. Albert Lyon for the year 1930, which was the year in which the transaction now before us was carried out, to the extent to which Lyon received gain in the sale of assets other than the tire cover patents, to the Houdaille-Hershey Co. See *Hellebush* v. *Commissioner*, 65 Fed. (2d) 902. Lyon paid this tax. Neither Lyon nor the Lyon Development Co. returned or paid tax on the transfer of the patents and patent rights involved here, to petitioner. Fully informed of all the details of the exchanges among Lyon, the Lyon Development Co., Elizabeth Aikens Lyon, and petitioner, respondent chose not to tax that transfer. It is, then, reasonably to be inferred that he considered the exchange between the Lyon Development Co. and the petitioner to constitute a tax-free reorganization under the law as it had then been construed. Petitioner and respondent thus took the position that the Lyon Development Co. was not a mere conduit in this transaction and that the transfer of its assets to petitioner by that company was not just a fiction, for tax purposes, but was indeed a reality.

However, in *Higgins* v. *Smith*, 308 U. S. 473, the Supreme Court held that "* * * the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may *sustain* or *disregard* the effect of the fiction as best serves the purposes of the tax statute." [Emphasis supplied.] So, in the light of *Gregory* v. *Helvering*, and the record, the acquisition of Lyon's assets by petitioner through the Lyon Development Co. as a mere conduit, may have been, as petitioner argues, a mere device—a disguise—a fiction—but the Government is not compelled to so regard it in the special circumstances before us here. It may and here does continue to treat this fiction as real. It follows that the present transaction did constitute a statutory reorganization for the purposes of this proceeding.

We conclude that petitioner must use as a basis for the depreciation of its patents the cost of those patents to the Lyon Development Co. which was their cost to G. Albert Lyon. Sec. 113 (a) (6), Revenue Act of 1934.

On the second issue, we hold that petitioner is entitled to deduct in 1935 the unpaid balance of the loan to Appleby as a debt ascertained to be worthless and charged off in that year. Since Appleby had previously become bankrupt, there was no prospect of repayment other than out of the collateral, the Standard Land Co. stock. Petitioner discovered in 1935 that the collateral stock became worthless in that year by reason of the tax sale of the sole asset of Standard Land Co., and charged off the balance then owing. Its right to the deduction thereupon arose. *Kessler Oil & Gas Co.*, 41 B. T. A. 31.

Reviewed by the Board.

*Decision will be entered under Rule 50.*