## UNITED STATES v. BRAGER BUILDING & LAND CORPORATION.

### No. 4826.

Circuit Court of Appeals, Fourth Circuit.

Dec. 12, 1941.

Newton K. Fox, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Michael H. Cardozo, IV, Sp. Assts. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., on the brief), for appellant.

George C. Doub, of Baltimore, Md. (Marshall, Carey & Doub, and Morris Fedder, all of Baltimore, Md., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

**350**

SOPER, Circuit Judge.

This suit was brought by the Brager Building and Land Corporation to recover an overpayment of income taxes for the period September 4, 1936 to December 31, 1936, and for the calendar year 1937, in the aggregate sum of $915.18, and resulted in a judgment of the District Court for that amount. The income which gave rise to the tax was ascribed to the Building Corporation by the Commissioner of Internal Revenue under the following circumstances.

■ From 1922 to 1927, Albert A. Brager and A. Stanley Brager, his son, were co-partners engaged under the name of Brager of Baltimore in conducting a department store in property owned by them in that city. In 1927 they sold the business to a corporation known as Brager-Eisenberg, Inc., in consideration of the assumption by the purchaser of certain debts of the partnership. At the same time the partnership leased the store to the new corporation for a period of twenty years. The property was covered by a deed of trust to the Mercantile Trust Company of Baltimore to secure a bond issue, and the deed provided for certain amortization and interest payments to be made to the trustee. The lease provided that the rent should be equal to the payments required by the deed of trust, and should be paid directly to the trustee, and these provisions were carried into effect. The rental also included the payment of taxes, assessments and other fixed charges.

In March, 1936 the elder Brager died. The mortgage debt on the real estate then amounted to $700,000, leaving little, if any, equity in the property which could be realized only by means of the amortization payments on the bonds. The only other assets of the partnership were a few hundred dollars in cash, $10,000 in United States bonds held to secure the payment of certain ground rents on the property, and $26,000 in a sinking fund held by the trustee.

Under the partnership agreement the partnership was not dissolved by the death of the senior partner. In 1936 the son organized the Building Corporation, and as surviving partner, conveyed the store to the corporation for 100 shares of stock of the par value of. $1 per share. It is admitted that this conveyance was not made for the purpose of evading taxes. The purpose was to provide an agency to take over and hold the legal title to the property in order to avoid complications in case of the subsequent death of the surviving partner. The partnership in the meantime retained complete control of the property. The corporation in fact had no business activities and served no purpose other than . the passive holding of the legal title. It did not assume the mortgage debt. It had no salaried officers or employees. No money passed through its hands. It had no actual capital, no bank account, no office, and no books of account. The income assessed to the corporation consisted of a portion of the rental paid by the tenant to the trustee under the mortgage.

The income tax returns of the partnership and the Building Corporation for the year 1936 indicate that the Building Corporation was the owner of the property after September 3, 1936, and treated the net income for the property after that date as taxable to the corporation. These returns also indicated that the corporation had also taken over the other assets of the partnership and had assumed its liabilities. But the testimony showed that this accounting was made by mistake, and it was corrected in subsequent returns. The partnership return for the year 1937 included the rental from the real estate, of which one-half was allocated to the estate of the deceased partner and one-half to the surviving partner; and the individual returns of the estate and of the surviving partner included the income thus received.

■ Under these circumstances the District Judge was justified in holding that the income in dispute was attributable to the partnership and not to the Building Corporation. The general rule undoubtedly is that for tax as well as other purposes, a corporation is an entity separate and distinct from its stockholders. Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Groves v. Commissioner, 4 Cir., 99 F. 2d 179. But it has frequently been decided in a variety of circumstances that the technical separateness of the two entities may be disregarded in the assessment of income taxes, especially where the stock is closely held and there is little or no distinction in actuality between the corporation and the holders of its stock. Thus it was held in Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406, that no deductible loss occurs upon a sale by an individual taxpayer to a corporation wholly owned by him. The actuality of the corporation was conceded. It had paid franchise and in-

come taxes and carried on numerous transactions over a period of years. The court said (308 U.S. at page 476, 60 S.Ct. at page 357, 84 L.Ed. 406): "But the existence of an actual corporation is only one incident necessary to complete an actual sale to it under the revenue act. Title, we shall assume, passed to Innisfail but the taxpayer retained the control. Through the corporate forms he might manipulate as he chose the exercise of shareholder's rights in the various corporations, issuers of the securities, and command the disposition of the securities themselves. There is not enough of substance in such a sale finally to determine a loss."

The Commissioner also relies on this decision in the pending case because the court referred with approval to its earlier decision in Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L. Ed. 399, in which an active corporation sought a ruling that a sale by it to its sole stockholder could not result in a taxable profit, but the identities of corporation and taxpayer were held distinct for purposes of taxation. In respect to this case the court said (308 U.S. 477, 478, 60 S.Ct. 357, 358, 84 L.Ed. 406):

"* * * In the Commonwealth Improvement Company case, the taxpayer, for reasons satisfactory to itself voluntarily had chosen to employ the corporation in its operations. A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages. Cf. Edwards v. Chile Copper Co., 270 U.S. 452, 456, 46 S.Ct. 345, 346, 70 L.Ed. 678.

"On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Corliss v. Bowers, 281 U.S. 376, 50 S. Ct. 336, 74 L.Ed. 916; Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319."

From this holding it is inferred in the Commissioner's brief that "the general rule appears to be that the corporate entity may be disregarded by the government in furtherance of the collection of proper taxes, but may not be disregarded by its creator to reduce tax liability." The diversity of business transactions in corporate form does not permit of so easy a generality. It is certainly true that schemes of taxpayers to escape taxation by the mere use of the corporate form will not be tolerated; and also that the sole ownership of the stock of a corporation by an individual will not of itself justify the treatment of the corporation as non-existent for tax purposes, if its activities indicate that it has achieved a substantial as well as a nominal existence. But it is going too far to say that if a taxpayer forms a corporation for his convenience, he is thereafter estopped from disclosing the true nature of the arrangement, whenever it is of advantage to the government to recognize only the corporate form. The advantage of the taxpayer has been served by many decisions in which the identity of the corporation and its sole stockholder has been adjudicated, and we do not understand that this body of the law has now for practical purposes ceased to exist. In a number of these cases, some of them decided after Higgins v. Smith, under circumstances quite similar to those found in the case at bar, it has been held that when a corporation has been formed merely as an agency to hold title to real estate for the convenience of the owner, and has served this purpose with little or no independent activity on its part, the property and the income therefrom should be regarded as belonging to the stockholder. See 112 W. 59th St. Corp. v. Helvering, 62 App.D.C. 350, 68 F.2d 397; North Jersey Title Ins. Co. v. Commissioner, 3 Cir., 84 F.2d 898; Mayer v. Commissioner, 36 B.T.A. 117; Carling Holding Co. v. Commissioner, 41 B.T.A. 493; Watson v. Commissioner, 1940, 42 B.T.A. 52; Cf. McDonald v. Commissioner, 4 Cir., 52 F.2d 920; Regals Realty Co. v. Commissioner, 1940, 43 B.T.A. 194; Lyon, Inc., v. Commissioner, 1940, 42 B.T.A. 1094. These decisions are in harmony with the statement of Griffiths v. Commissioner, 308 U.S. 355, 357, 358, 60 S.Ct. 277, 278, 84 L.Ed. 319, where it is said: "We cannot too often reiterate that 'taxation is not so much con-

cerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid.' Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. And it makes no difference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. Cf Gregory v. Helvering, 293 U.S. 465, 55 S. Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. See, also, Lewis & Co. v. Commissioner, 301 U. S. 385, 57 S.Ct. 799, 81 L.Ed. 1174.

The purely nominal character of the Brager Building and Land Corporation is established beyond question by the undisputed facts set out above. It was a convenient agency chosen by the owners to hold the record title of their property, and nothing more. It performed no other function, it engaged in no other activity, and was at all times completely subject to the dominion and control of the Brager partnership. The income from the property was in our opinion income of the partnership.

Affirmed.