IRVING SNYDER, TRANSFEREE, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8824-73—8827-73.    Filed July 27, 1976.

*Gene W. Reardon,* for the petitioners.
*Charles H. Cowley,* for the respondent.

FAY, *Judge:* Respondent determined deficiencies in income tax and gift tax, and penalties with respect thereto, against petitioners Rose Baird and Irving Snyder (as transferee of Rose Baird) for the taxable year 1970, as follows:

| Docket No. | Petitioner | Amount income tax | Additions to tax Sec. 6651(a)(1)[2] | Sec. 6651(a)(2) |
|---|---|---|---|---|
| 8827-73 | Rose Baird | $19,073.44 | - - - | - - - |
| 8824-73 | Irving Snyder, transferee | 19,073.44 | - - - | - - - |

[1] Cases of the following petitioners are consolidated herewith: Irving Snyder, Donee, Transferee, docket No. 8825-73; Rose Baird, also known as Razel Snyder, docket No. 8826-73; and Rose Baird, also known as Razel Snyder, docket No. 8827-73.

[2] All-section references herein are to the Internal Revenue Code of 1954, as amended.

| Docket No. | Petitioner | Amount | Additions to tax | |
|---|---|---|---|---|
| | | | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| | | Gift tax | | |
| 8826-73 | Rose Baird_____ | 31,776.48 | $7,149.71 | $4,766.47 |
| 8825-73 | Irving Snyder, donee, transferee _____ | 31,776.48 | 7,149.71 | 4,766.47 |

The principal issue presented for our decision is whether the transfer by petitioner Rose Baird to her brother, Irving Snyder, of an installment note receivable constituted a gift subject to gift tax liability[3] and whether such transfer also triggered recognition for income tax purposes, under section 453(d), of the full balance of the gain which had been deferred under the installment method upon the sale of property in which such installment note was received by Rose Baird. If we find that petitioner Rose Baird is liable for either the income tax or the gift tax, as determined by respondent, we are presented with the further question as to whether petitioner Irving Snyder may be held liable for such tax, as transferee of Rose Baird.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, are incorporated by this reference.

Petitioner Rose Baird, also known as Razel Snyder (hereinafter referred to as Rose), resides in Denver, Colo., and filed an individual income tax return for the year in question with the Internal Revenue Service. Rose did not file a Federal gift tax return for 1970.

Petitioner Irving Snyder (hereinafter referred to as Irving) also resides in Denver, Colo. Irving is the brother of Rose, and Irving and Rose have for many years shared the same residence at 1471 Meade Street in Denver. Rose has two children. She was deserted by her husband when the children were young, and subsequently Irving provided financial support for Rose and the children. Rose has never been well-off financially and has generally depended upon Irving for her support.

During the years 1940 through 1957, Irving was engaged in the used-car business under the name of Denver Car & Truck Market. To finance this business, Irving periodically borrowed sums from various Denver banks and finance companies and from his personal friends, Jack and Ben Levy.

---

[3] Respondent also determined that Rose Baird made a taxable gift to Irving Snyder of a $20,000 savings account.

In 1951 Irving purchased certain real estate, consisting of land and building, located at 15200 West Colfax Avenue, Jefferson County, Colo. (hereinafter sometimes referred to as the West Colfax property). Irving purchased the property subject to an existing first mortgage, paying the balance of the $26,500 purchase price in cash. (He subsequently paid off the first mortgage in full.) Title was deeded to Irving in his own name on June 30, 1951.

Over the years, both prior to and subsequent to 1957, Irving had been borrowing sums of money from Ben Levy and Jack Levy for use in the operation of his automobile business. Irving and the Levys had known each other throughout their lives, and their financial dealings were always on an informal basis. Irving would borrow from the Levys without signing notes, based upon personal trust, and would periodically make repayments with interest. At times his borrowings from the Levys reached as high as $25,000-$30,000.

During 1957, when the Levys and Irving were getting along in years, it was mutually agreed among them that the Levys should have some security to collateralize Irving's indebtedness to them. Thus, it was decided that Irving would deed over to the Levys the West Colfax property, which would be held by the Levys as such collateral. Such a deed was executed on August 1, 1957. Although the Levys thereupon held title to the West Colfax property, it was understood, and the Levys gave Irving a letter stating, that upon repayment by Irving of his indebtedness to the Levys, title to the property would be returned to Irving. During the time that the property was held by the Levys pursuant to the foregoing arrangement, the Levys received and retained the rent income therefrom and paid the real estate taxes and other costs relating thereto.

During 1967 there arose an opportunity for Irving to sell a portion of the West Colfax property to Chevron Oil Co., and to develop another property which he owned in Denver. In connection with these transactions he sought to borrow $97,500, pending completion of the proposed sale. This money was to be used in part to repay Irving's then indebtedness to the Levys, who still held the property as collateral, and to the American National Bank. The North Denver Bank was willing to make such a loan, based upon the West Colfax property as collateral and the prospect of prompt repayment out of the proceeds of the proposed

sale to Chevron Oil Co. However, because of a dispute with Irving in connection with a bank loan several years earlier, it was unwilling to make the loan in Irving's name. To avoid this problem, a representative of the bank suggested that the loan be made in the name of Irving's sister, Rose. Thus, in April 1967, the following steps took place: The West Colfax property, then still in the name of the Levys, was deeded by the Levys to Rose upon the written instructions of Irving. At the same time Rose executed a promissory note for $97,500 to the North Denver Bank, together with a deed of trust (mortgage) and assignment of rents to the North Denver Bank, as collateral for the note. From the loan amount of $97,500, the North Denver Bank paid off the following indebtedness of Irving: $44,592.36 to the Levys, $21,720.10 to the American National Bank, and $30,000 in connection with the development of Irving's other Denver property.

Thereafter, Irving and his real estate agent completed negotiations with the Chevron Oil Co. for the sale to Chevron of a portion of the West Colfax property for $103,000. The closing of this sale took place at the North Denver Bank in October 1967. The bank released the strip of property being sold from its mortgage on the entire parcel and Rose, as legal titleholder, executed a deed for such strip to Chevron Oil Co. The bank retained a portion of the sale proceeds received from Chevron to retire a portion of its previous loan, and subsequently the balance of the loan was repaid and the bank released its mortgage as to the remaining balance of the property.

Charles E. Stevinson, a Chevrolet automobile dealer, was interested in buying the remainder of the West Colfax property. Several meetings were held, attended by Stevinson and his attorney and by Irving and his attorney, at which the sale of the property was discussed. Eventually, a sale for $140,000 was agreed to. Rose did not participate in any of these negotiations, and Stevinson was under the impression that Irving was the owner of the property, even though he eventually learned that legal title was in Rose's name. Irving's attorney also considered Irving as the owner of the property and considered Rose as a nominee or trustee.

Prior to the closing of the sale, a title search turned up a potential cloud on the title to the property. Irving hired a law firm for the purpose of taking action to clear title prior to the sale

to Stevinson. This firm filed a suit to quiet title in the name of Rose, as legal titleholder, and eventually a default judgment was entered in her favor.

At the closing of the sale, May 29, 1968, Rose executed a deed of the property to Stevinson, and Stevinson issued a check in the amount of $19,000 ($1,000 had been previously paid as a deposit) and an installment note for $120,000. These were issued in Rose's name, since she had been the legal titleholder to the property being transferred. Stevinson also executed a deed of trust (mortgage) on the property in favor of Rose to secure his $120,000 note.

Rose filed individual income tax returns for each of the years 1967 through 1970, all prepared for her by certified public accountants hired by Irving. In her 1967 return she reported the sale of the portion of the West Colfax property to Chevron Oil Co., and in her 1968 return she reported the sale of the balance of the property to Stevinson, electing to report the gains therefrom on the installment method under section 453(b). In her 1969 and 1970 returns she continued the installment method of reporting with respect to payments received from Stevinson on his purchase-money note. The tax liability reported by Rose in each of these returns was paid by Irving.

During a portion of 1970 and prior thereto, a savings account was maintained in Rose's name, into which were deposited the installment payments received from Stevinson. Irving also deposited money in this account occasionally.

In 1970 Rose transferred to Irving the Stevinson note and the deed of trust securing it.

## ULTIMATE FINDINGS OF FACT

Irving was the benefical and real owner of the West Colfax property and the Stevinson installment note; during the period that Rose held legal title thereto she was acting merely as a nominee for Irving.

## OPINION

The correctness of both the income tax deficiency and the gift tax deficiency determined by respondent in this case turns upon the question whether Irving was the true beneficial owner of the West Colfax property and the Stevinson installment note during the period that title thereto was held by Rose. The West Colfax

property was originally owned by Irving. In 1957 Irving deeded legal title to the Levys. In 1967 the Levys deeded title to Rose. Thereafter, Rose deeded a portion of the property to Chevron Oil Co. in 1967 and the balance to Stevinson in 1968. In connection with the latter transfer, Stevinson executed an installment note payable to Rose, and the sale was reported in Rose's tax return on the installment method. In 1970 Rose assigned this note to Irving.

Respondent determined that the 1970 assignment of the installment note by Rose to Irving had certain tax consequences to Rose, which were not reported by her. First, he determined that the transfer of the note without consideration from Irving constituted a gift to Irving subject to the gift tax under section 2501. Respondent further determined that the transfer of the installment note by Rose to Irving triggered recognition by Rose of the full remaining balance of the gain from the sale of the West Colfax property which had been deferred pursuant to the installment method under section 453.[4] The deficiencies (and penalties relating thereto) determined as to Rose were also assessed against Irving as transferee of Rose.

Respondent's determinations are based upon the flow of *legal title* to the West Colfax property and the Stevinson note. There is no question that Rose held title to the property prior to the Stevinson sale and was the payee of the Stevinson note prior to the assignment of the note to Irving. Petitioners contend, however, that Rose's involvement in the ownership and sale of the property was solely in the role of a straw party or nominee for Irving, and that Irving was at all times the real and beneficial owner of the property and the Stevinson note. If that is the case, petitioners contend, the 1970 transfer of the Stevinson note by Rose to Irving was without tax consequences—since Irving was already the true and beneficial owner thereof.

There can be no doubt that if we look solely to the legal form of the transactions in question, as respondent would have us do, without regard to the true nature of Rose's involvement therein, respondent's determinations must be sustained. However, it is well established that the substance of a transaction, rather than

---

[4] Sec. 453(d) provides that in the event of transfer of an installment obligation, gain or loss is recognized in the amount of the difference between the transferor's basis in the obligation and the amount realized. In the case of a transfer otherwise than by sale or exchange, the amount realized is deemed to be the fair market value of the obligation transferred.

the form in which it is cast, is determinative of tax consequences unless it appears from an examination of the statute and its purpose that form was intended to govern. *Commissioner v. P.G. Lake, Inc.,* 356 U.S. 260, 265-267 (1958); *Commissioner v. Court Holding Co.,* 324 U.S. 331, 334 (1945); *Griffiths v. Commissioner,* 308 U.S. 355 (1939); *Higgins v. Smith,* 308 U.S. 473 (1940); *Minnesota Tea Co. v. Helvering,* 302 U.S. 609 (1938); *Gregory v. Helvering,* 293 U.S. 465 (1935). In consonance with this principle, courts have often recognized that the tax consequences of a transaction involving a nominee or straw party must be determined with regard to the true beneficial interests involved. "[T]ransactions, which do not vary, control or change the flow of economic benefits, are to be dismissed from consideration." *Higgins v. Smith, supra* at 476; *James B. Lapsely,* 44 B.T.A. 1105 (1941); *William J. Snyder,* 11 B.T.A. 807 (1928). See also *Clarence L. Hook,* 58 T.C. 267 (1972), and cases cited therein at page 273, dealing with nominee ownership of corporate stock.

In the instant case petitioners have established quite convincingly that Rose was at all times merely a nominee for Irving, and we have so found. Both petitioners (as well as other witnesses) testified as to the reason for the nominee arrangement utilized in connection with the West Colfax property, and we find such explanation plausible.

Irving and Rose were brother and sister and had lived together for many years. Rose did not have significant assets or income of her own and was substantially supported by Irving. In these circumstances when Irving had the need for a nominee or straw party in a real estate transaction, it is understandable that he would have chosen Rose for this role.

More significantly, petitioners produced several witnesses, who were involved in various ways in the chain of transactions at issue herein (including Irving's attorney and Stevinson), who testified that they had always considered Irving the beneficial owner of the property even though Rose held legal title.

Irving negotiated and made all of the decisions regarding each of the transactions involving the West Colfax property, including the conveyance from the Levys to Rose and the mortgage by Rose to the bank, the sale to Chevron Oil Co., and the sale to Stevinson. Irving received and controlled all net cash proceeds from the sale to Stevinson. Irving even retained the accountants

for the preparation of Rose's (and his own) tax returns. It is command of income and its benefits which marks the real owner of property. *Higgins v. Smith, supra* at 478. Rose was a convenient agency chosen by Irving to hold the record title to his property, and nothing more. Her record title was at all times subject to the dominion and control of Irving. *United States v. Brager Building & Land Corp.,* 124 F.2d 349, 352 (4th Cir. 1941).

Respondent relies heavily upon Colorado real property law as establishing that Rose was the owner of the West Colfax property. He cites Colorado statutes and cases which establish the ownership of real property is evidenced by a recorded deed, and he discusses certain exceptions to this rule. Because Rose was the owner by recorded deed, he contends, under Colorado law Irving could not have been the owner. Unfortunately, respondent misses the mark in his reliance upon local real property law as governing income tax consequences. Even petitioners did not dispute that Rose was the *legal* owner of the property under Colorado law; however, it is the beneficial ownership and economic consequences of the transactions which govern tax consequences. *Higgins v. Smith, supra.*

Respondent also places considerable emphasis on various dealings with third parties with respect to the property which were handled in Rose's name. For example, Rose signed the note and mortgage to the bank; the action to quiet title was filed in Rose's name. However, there is nothing in these facts inherently indicating that Rose was the beneficial owner. Rather, it strikes us that these activities in Rose's name were entirely consistent with, and would have been required in, her role as nominee or straw party titleholder.[5]

Respondent points out that the sales of the West Colfax property in part to Chevron Oil Co. in 1967 and in part to Stevinson in 1968 were reported in Rose's 1967 and 1968 returns, respectively, and the deferred income from the installment payments received from Stevinson was also reported in her returns, prior to her transfer of the Stevinson note to Irving in 1970. Of course, this reporting of income by Rose from the sale of

---

[5] See *Frank Ronkowski,* T.C. Memo. 1956-276, in which we held that the taxpayer's actions as apparent owner of a tavern business were solely in the capacity of nominee for other persons, who were the true beneficial owners, with the result that the income from the tavern was not reportable by the taxpayer.

the West Colfax property is entirely inconsistent with petitioners' position that Irving, and not Rose, was the real owner of the property prior to its sale. Irving's and Rose's tax returns were both prepared by professional accountants, retained by Irving. Their preparation of Rose's return was based upon information provided by Irving. Although Irving explained that the original reporting of the West Colfax sale in Rose's return was an error, in these circumstances one might suspect that at the time it was deemed more advantageous to report the gain in Rose's return than in Irving's return, since Rose was in a lower tax bracket. In this connection it should be noted that Irving provided the funds for payment of Rose's income tax. While this original reporting of the gain in Rose's return rather than in Irving's does tend to undercut petitioners' position herein, considering all of the evidence presented, we cannot escape the conclusion that Irving was the real and beneficial owner of the property which was sold—regardless of the fact that Rose first reported the sale.

Of course, this means that the income from the sale was improperly omitted from Irving's 1968 and 1969 returns. This omission and the reasons therefor are matters which respondent may wish to pursue, but in any event they are not issues in this case, which involves only the tax liability of Rose.

Since we have found that Irving was at all times the real and beneficial owner of the Stevinson note, we hold that there were no income or gift tax consequences to Rose upon the assignment by her of the note to Irving in 1970.

In his original notice of gift tax deficiency respondent determined that Rose had made a taxable gift to Irving of a $20,000 savings account (in addition to the Stevinson note). However, no explanation was given as to the facts surrounding this determination, and respondent has not referred to the matter on brief. Irving testified that a savings account had been maintained in Rose's name, into which account payments from Stevinson and other moneys belonging to Irving were deposited. He also testified that respondent's agents had seized the account, to be applied against petitioners' tax liability. In light of the foregoing, respondent's gift tax determination concerning the $20,000 savings account cannot be sustained.

Since we have held that respondent's income tax and gift tax determinations against Rose must be rejected, we do not reach the question of Irving's liability as transferee of Rose.

*Decisions will be entered for the petitioners.*