JOHN W. BIHLMIRE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bihlmire v. Commissioner
Docket No. 3559-73.
United States Tax Court
T.C. Memo 1979-21; 1979 Tax Ct. Memo LEXIS 504; 38 T.C.M. (CCH) 68; T.C.M. (RIA) 79021; January 15, 1979, Filed Norman J. Barry, for the petitioner. Edward J. Roepsch and Paul G. Topolka, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to taxes as follows: Addition to Tax Year
Deficiency
Sec. 6653(a) [1] 1964 $ 60,217 $ 2,011 1965
6,659
333 1966
14,862
743 1967
36,181
1,809 1968
24,508
1,225
The issues for decision are: (1) Whether the expenditures incurred by States Improvement Company and A. M. Turner Company with regard to Stone Manor during the taxable *505 years 1964 through 1968 were for the personal benefit of the petitioner and, therefore, taxable to the petitioner as constructive dividends. (2) Whether any part of the underpayment of petitioner's income taxes for the taxable years 1964 through 1968 was due to negligence or intentional disregard of the rules and regulations under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time of filing his petition herein, petitioner, John W. Bihlmire, resided in Lake Geneva, Wisc. On May 1, 1953, petitioner acquired all the stock of States Improvement Company, Inc. (States, Inc.), an Illinois corporation. Petitioner was president and sole shareholder of States, Inc. from May 1, 1953, until November 14, 1967, when States, Inc. was dissolved. Thereafter, on December 1, 1953, petitioner acquired all of the stock of A. M. Turner Company (Turner Co.), an Illinois corporation. Petitioner was president and sole shareholder of Turner Co. from December 1, 1953, until November 16, 1971, when Turner Co. was dissolved. Neither States, Inc. nor Turner Co. were licensed to do business in Wisconsin. On March 13, 1964, petitioner purchased *506 from Walworth County, Wisconsin, certain parcels of real estate (hereinafter Stone Manor) for $ 76,000. The county clerk executed and delivered a quitclaim deed for Stone Manor to petitioner on this same day. Also, on March 13, 1964, petitioner recorded this deed and took physical possession and control of Stone Manor. One of the conditions in the quitclaim deed petitioner received from the county was that petitioner must agree to defend the appeal pending in the Wisconsin Supreme Court concerning the validity of the county's title to Stone Manor. Subsequently, petitioner was substituted as party-defendant in place of Walworth County, Wisconsin, in the pending appeal. Petitioner was thereafter involved in extensive litigation concerning title to Stone Manor from March 1964 until March 1969 when it was finally determined that the deed from Walworth County to petitioner was valid and title was quieted in petitioner's name. Stone Manor is a large mansion situated on lake front property at Lake Geneva, Wisc. Petitioner acquired Stone Manor with the intention of converting it into a resort. However, it had not been occupied for many years and was in need of much repair. *507 Therefore, at petitioner's direction States, Inc. incurred the following expenditures with regard to Stone Manor: Year
Amount
1964
$ 98,639
1965
48,940
Total
$ 147,579
While the 1964 expenditures were initially charged in part to an asset account and in part to a job account, at the end of the calendar year the entire amount was charged directly to States, Inc.'s costs of goods sold and treated as such on the corporation's 1964 Federal income tax return.In 1965, States, Inc. charged all the expenditures to a job account. However, at the end of the calendar year the total amount was charged to costs of goods sold as in 1964. Although States, Inc. funds were being used on Stone Manor, its board of directors adopted no resolution approving either the acquisition or improvement of this property with its funds. In addition, the petitioner did not execute any promissory notes or other evidence of indebtedness payable to States, Inc. in connection with the expenditures States, Inc. incurred on Stone Manor. However, States, Inc. did file mechanics liens, as a general contractor, against petitioner for the improvements it made to Stone Manor. These liens *508 were filed on May 26, 1964, and June 4, 1964, in the amounts of $ 46,150 and $ 22,700, respectively. Neither of these liens has ever been satisfied. In addition to States, Inc. expenditures, at petitioner's direction Turner Co. expended the following amounts with regard to Stone Manor: Year
Amount
1965
$ 19,173
1966
85,173
1967
81,349
1968
95,754
Total
$ 281,449
While Turner Co. initially charged all of these expenditures to a job account, at the end of each calendar year the total annual amount expended was charged directly to Turner Co.'s cost of goods sold and treated as such on its tax returns. Although Turner Co. funds were being used on Stone Manor, its board of directors adopted no resolution approving either the acquisition or improvement of this property with its funds. In addition, the petitioner did not execute any promissory notes or other evidence of indebtedness payable to Turner Co. in connection with the expenditures Turner Co. incurred on Stone Manor. During the years 1965, 1966, 1967, and 1968, while States, Inc. and Turner Co. were expending their funds on Stone Manor, petitioner listed Stone Manor as an asset on his personal *509 financial statements which were submitted to bonding companies for the purpose of securing performance bonds. On February 2, 1967, petitioner executed a quitclaim deed for Stone Manor to Turner Co. The deed, which was recorded on February 2, 1967, transferred all of petitioner's right, title, and interest in Stone Manor to Turner Co. In his statutory notice of deficiency, respondent determined that since petitioner was the record owner of Stone Manor, the amounts expended by States, Inc. and Turner Co. on Stone Manor were for the petitioner's personal benefit and, therefore, were taxable to him as constructive dividends. OPINION Prior to our determination of the issues at hand, we must consider a written objection made by petitioner. At trial when respondent's exhibits A through EK were admitted into evidence, petitioner reserved the right to object to these exhibits on grounds of relevancy. Thereafter, petitioner reduced his objection to writing and filed it with leave of court. Petitioner's objection is without merit and is therefore overruled. However, since respondent in his reply brief concedes that Exhibits G, V, and AD are irrelevant, we have not considered them. *510 The first issue we must decide is whether the expenditures incurred by States, Inc. and Turner Co. with regard to Stone Manor during the taxable years 1964 through 1968 were for the personal benefit of the petitioner and, therefore, taxable to the petitioner as constructive dividends. Respondent contends that since petitioner held legal title to Stone Manor in his own name and had possession and complete control of the property, it is evident he was the true and beneficial owner of Stone Manor. Thus, as owner of the property petitioner received a direct personal benefit when his two wholly owned corporations, States, Inc. and Turner Co., used their funds to improve Stone Manor. Therefore, the amounts expended by the corporations are taxable to petitioner as constructive dividends. Petitioner, on the other hand, argues that he acquired Stone Manor only as nominee for States, Inc. and Turner Co. Hence, the corporations were the true and beneficial owners of the property. Consequently, he derived no personal benefit from the funds expended by the corporations in connection with Stone Manor and, therefore, received no constructive dividends. It is well established that a constructive *511 dividend may result if a corporate disbursement is made for the personal benefit of a shareholder rather than for a valid corporate business purpose. Ross Glove Co. v. Commissioner,60 T.C. 569, 595 (1973); Dean v. Commissioner,57 T.C. 32, 40 (1971). Moreover, the tax consequences of a transaction involving a nominee or straw party must be determined with regard to the true and beneficial interests involved. Snyder v. Commissioner,66 T.C. 785, 791 (1976). Thus, whether petitioner derived a personal benefit from the funds his two corporations expended in connection with Stone Manor depends on who was the true and beneficial owner of this property. This is a question of fact. Schoenberg v. Commissioner,302 F.2d 416, 419 (8th Cir. 1962), affg. a Memorandum Opinion of this Court. In the present case, petitioner bears the burden of proving he acquired Stone Manor as nominee only, rather than as the true and beneficial owner. Rule 142(a), Tax Court Rules of Practice and Procedure. Although the record in this case leaves much to be desired, we have carefully considered the evidence presented, and we believe that *512 the petitioner has not met this burden. We conclude that petitioner acquired Stone Manor as the true and beneficial owner. Our decision rests on several factors. First, according to petitioner, he acquired title to Stone Manor in his own name only because he was advised by counsel that if title was placed in one of the corporation's names, the corporation would be unable to participate in the pending litigation concerning the validity of Walworth County's title to Stone Manor because under Wisconsin law foreign corporations not licensed to do business in Wisconsin cannot maintain or defend civil actions in Wisconsin courts. [2] Since neither States, Inc. nor Turner Co. was licensed to do business in Wisconsin, petitioner followed his counsel's advice and took title in his name. Assuming arguendo that the advice petitioner received with respect to Wisconsin law was accurate, his explanation is inconsistent with his later actions. On February 2, 1967, while the litigation over title to Stone Manor was still going on, petitioner transferred by quitclaim deed all his right, title, and interest in Stone Manor to Turner Co. [3] Considering *513 this transfer, we find the explanation offered by petitioner for taking title in his own name very difficult to believe. Second, although petitioner claims he acquired the property as nominee for his corporations, he fails to explain which of the two corporations was actually the true and beneficial owner. While petitioner does state on brief that States, Inc. supplied the acquisition funds, he offers no evidence to support this allegation. Finally, petitioner has no explanation for two facts, both of which indicate that he was the true and beneficial owner of Stone Manor. First, in 1964, States, Inc. filed two mechanic's liens, as a general contractor, against petitioner for the improvements it made to Stone Manor. The liens totalled $ 68,850. This action by States, Inc. demonstrates that it considered petitioner, and not itself, to be the true and beneficial owner of Stone Manor.Second, during the years 1965 through 1968, petitioner listed Stone Manor as a personal asset on his financial statements which were submitted to bonding companies for the purpose of securing performance bonds. To *514 us, this clearly indicates petitioner knew that he, and not one of his corporations, was the true and beneficial owner of Stone Manor. While we have concluded that petitioner acquired Stone Manor as true and beneficial owner in 1964, we do not believe he remained the true and beneficial owner throughout the taxable years before us. We find that when petitioner gave Turner Co. a quitclaim deed to Stone Manor on February 2, 1967, he transferred all his right, title and interest in the property to Turner Co. Thereafter, Turner Co. was the true and beneficial owner of Stone Manor. Consequently, from March 13, 1964, the date petitioner acquired Stone Manor, until February 2, 1967, the date he deeded the property to Turner Co., petitioner derived a personal benefit from the funds his two corporations expended on Stone Manor. Thus, to the extent of their earnings and profits, the amounts States, Inc. and Turner Co. spent on Stone Manor during this period constitute constructive dividends to the petitioner. [4] However, the amounts Turner Co. expended on Stone Manor after it became the true and beneficial owner of the property are not taxable to petitioner as constructive dividends *515 because he received no personal benefit from Turner Co. using its funds to improve property it now owned. The second issue we must decide is whether any part of the underpayments of petitioner's income taxes for the taxable years 1964 through 1968 was due to negligence or intentional disregard of the rules and regulations under section 6653(a). Petitioner has the burden of proof on this issue. Courtney v. Commissioner,28 T.C. 658 (1957). Petitioner has failed to carry his burden because he offered no evidence whatsoever on this issue. Therefore, with respect to the taxable years for which deficiencies have been determined we hold that the section 6653(a) additions to tax were properly imposed by the respondent. To reflect the foregoing, Decision will be *516 entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, and in force during the years in issue.↩
2. Wis. Stat. Ann. § 180.847↩ (1957).
3. This deed was recorded the same day it was transferred, February 2, 1967.↩
4. Because there is no evidence in the record as to when during 1967 Turner Co. expended its funds to improve Stone Manor, the expenditures should be allocated to petitioner on a pro rata basis. Since petitioner owned the property for the first 33 days in 1967, 33/365 of the total amount Turner Co. expended on Stone Manor in 1967 should be allocated to petitioner as a constructive distribution.↩